## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**UNFILTERED WITH KIRAN, LLC
AND KIRAN CHAWLA**

**VERSUS**

**CITY OF BATON ROUGE/PARISH
OF EAST BATON ROUGE AND
MURPHY PAUL, INDIVIDUALLY AND
IN HIS OFFICIAL CAPACITY AS CHIEF
OF THE BATON ROUGE POLICE
DEPARTMENT**

**CIVIL ACTION NO. 3:22-cv-937**

**JUDGE: DEGRAVELLES**

**MAGISTRATE-JUDGE: JOHNSON**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## SUPPLEMENTAL, AMENDING, AND RESTATED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, Unfiltered with Kiran and Kiran Chawla, supplement and amend their Complaint for Declaratory and Injunctive Relief pursuant to the Court's Order issued August 11, 2023, in the following manner and as indicated in **bold**:

1.

Jurisdiction is founded herein pursuant to 28 U.S.C. §1331 (federal question) as this matter arises pursuant to the 1st Amendment to the United States Constitution.  Plaintiffs submit this Court also enjoys supplemental jurisdiction pursuant to 28 U.S.C. §1367 as to plaintiffs' claims arising under Louisiana law.  Venue is proper within this judicial district as the majority of the incidents giving rise to plaintiffs' claims occurred within this judicial district.

2.

Made defendants herein are:

1. City of Baton Rouge/Parish of East Baton Rouge (hereinafter "City-Parish"), a
   municipal entity domiciled in East Baton Rouge Parish, Louisiana and a "person"

within the meaning and intent of 42 U.S.C. §1983, and of which the Baton Rouge Police Department is an Agency;

2. Murphy Paul, individually and in his official capacity as Chief of Police of the Baton Rouge Police Department (hereinafter "Chief Paul" and "BRPD") and a "person" within the meaning and intent of 42 U.S.C. §1983, a resident of the full age of majority of East Baton Rouge Parish, Louisiana.

3.

Plaintiff, Unfiltered with Kiran, LLC, is an online media organization which routinely reports on the operation and functioning of defendant City-Parish, the BRPD, an Agency of the City-Parish, and BRPD Chief Paul, in addition to reporting on the community at large **and issues of prominent public concern including crime within the Baton Rouge community and the activities of the defendants' public officials**. Unfiltered with Kiran, LLC began as an online media organization in 2019, and was formally incorporated in 2021. Unfiltered currently has over 650,000 followers. Plaintiff, Kiran Chawla, is a nationally recognized reporter. She is employed by Unfiltered with Kiran, LLC and has been a news reporter for over twenty (20) years. Ms. Chawla and Unfiltered won the prestigious Edward R. Murrow award for outstanding journalism in 2022. Ms. Chawla has also been the recipient of several Emmy awards, a prior Murrow award, and numerous awards for her reporting spanning her journalism career. **Most recently, Plaintiffs received two (2) additional Murrow awards, one was for reporting on issues within Baton Rouge and national recognition for their reporting.**

4.

Unfiltered publishes online, including news articles, video news reels, investigative reports, features stories, and interviews with victims of crime affording them a public voice.

Unfiltered pursues the publication of news through interviews with public officials, receipt of and review of press releases, attendance at press conferences, news gathering through sources and public information, and also offers members of the general public a place to submit their "tips" for potential stories.  Included among many of Unfiltered with Kiran's news stories are investigative and informational reporting pieces involving activities of State, Parish, and Local political subdivisions and their officials.  Significantly, these news stories also include reporting regarding the City-Parish, the BRPD, and Chief Paul.  **These are matters of prominent public concern.**

5.

On September 1, 2022, Plaintiffs attended a press conference hosted by BRPD. The BRPD press conference had been publicly announced.  However, once Plaintiffs started live video streaming the press conference, Plaintiffs were asked to leave the press conference by City-Parish/BRPD personnel.  Defendant City-Parish/BRPD advised plaintiffs they were "not invited" to the press conference and were not therefore permitted to be in the room.  However, several other news outlets, members of the public, and reporters were not only present, but permitted to remain after plaintiffs were ordered out.  When plaintiffs asked why they were being removed, defendants offered no explanation. **Plaintiffs submit their removal from the conference denied the public its right to be informed and be timely informed and violated Plaintiffs' clearly established First and Fourteenth Amendment rights to access to public information and to be free from punishment and retaliation on account of their viewpoints and reporting of the news.**

6.

In July, 2020, plaintiffs reported on several billboards posted by the Baton Rouge Union of Police throughout the Baton Rouge area critical of defendants and, specifically, Chief Paul and the BRPD.  As a result, defendants were upset by the content of the plaintiffs' reporting and,

thereafter, began excluding plaintiffs from access to press releases regularly issued by email to virtually every other media outlet in the Greater Baton Rouge and surrounding areas and removed plaintiffs from the list of media outlets regularly receiving notice of press conferences held by defendants.  When Plaintiffs contacted the Public Information Officer for the City-Parish, Mark Armstrong, by text requesting public information from the Mayor's office and comments regarding the billboards, Armstrong responded by claiming the information would not be provided to Plaintiffs because they were not "credentialed" by the Louisiana Association of Broadcasters and that:

> I am concerned about the lack of editorial oversight and peer review with your platform.  I would request a letter from your editor to consider your platform as official media.  Until your organization grows to include to include editors and additional content providers in a non-partisan organization, or if you are credentialed by LAB, then I will consider your platform a blog.  Please know I contacted several media and public relations professionals on this issue. With that said, doing a blog is great and your determination is admirable.  But know we typically only do interviews and media releases with credentialed media.

7.

Thereafter, plaintiffs continued to report on issues within the community and City-Parish government.  However, unlike other news outlets, Plaintiffs were denied access to public records, press releases when issued, and even notices of press conference.  This meant Plaintiffs' reporting was often untimely and significantly delayed in providing information to the public.  **Plaintiffs submit defendant City-Parish adopted an unwritten policy requiring "credentialing" which was selectively applied to Plaintiffs excluding Plaintiffs from participation in press conferences open to all other media because of the content of Plaintiffs' reporting and which afforded no right to appeal or otherwise challenge denial of access.  Plaintiffs contend the "credentialing" policy is unconstitutional on its face and as applied to Plaintiffs in violation of the Plaintiffs' First and Fourteenth Amendment Rights.**

8.

On June 21, 2021, Plaintiffs posted articles **about the** City-Parish, the BRPD, and Chief Paul including an article entitled, "Disparate Discipline within the Baton Rouge Police Department?".  The content of the article focused on review of disciplinary statistics under defendant Chief Paul, allegations by at least one BRPD employee of retaliation by defendant Chief Paul and the BRPD, and included commentary from the Metropolitan Crime Commission Head in New Orleans.  This publication further angered the defendants **and, as a result of the content of Plaintiffs' speech resulted in defendants' exclusion of Plaintiffs from press conferences open to other media and access to public information**.

9.

Shortly thereafter, plaintiffs attempted to obtain copies of public records relating to an investigative piece involving the BRPD, requesting a comment from BRPD regarding the contents of the proposed news item, and also an interview with defendant Chief Paul.  Plaintiffs were denied access to the public records, even though several other news outlets had been provided copies immediately upon request and denied any response from the defendants.

10.

On June 28, 2021, Plaintiffs attended a City-Parish Metro Council meeting during which defendant Chief Paul was questioned by the Council regarding his budget and, specifically, his request for additional funds to pay private attorneys for work associated, in part, with items on which Plaintiffs had reported.

11.

Before the start of the meeting, Plaintiffs, as did other news outlets present, approached defendant Chief Paul asking him for a comment.  Although defendant Chief Paul had spoken with

and given statements to the other news outlets present, defendant Chief Paul ignored Plaintiffs. When Plaintiffs questioned defendant Chief Paul why he would not speak with Plaintiffs and why Plaintiffs had been blocked from receiving press releases, defendant Chief Paul responded it was because of Plaintiff Chawla's "credibility" referring to the content of Plaintiffs' reporting critical of the defendants.

12.

Following the meeting, defendant Chief Paul again gave comments to every news outlet present except for the Plaintiffs.  When the Plaintiffs again asked defendant Chief Paul why they were being denied access to public records, press releases, and even an interview (as defendant Chief Paul had given to the other news outlets present), defendant Chief Paul falsely advised Plaintiffs there is a "policy" "you gotta go through them" [referring to the Public Information Office of the BRPD].  Defendant Chief Paul then advised Plaintiffs they were not "fair" and not "impartial" and that it was "personal."  When Plaintiffs advised they had been trying to obtain information through the Public Information Office of the BRPD without response and that the PIO had advised Plaintiffs it was defendant Chief Paul who was blocking access to the public information, defendant Chief Paul then falsely accused Plaintiff Chawla of pointing her finger at him, turned to others surrounding the area asking them to "document that", and continued to falsely iterate "there's a process."

13.

Plaintiffs then contacted the PIO for the BRPD in an attempt to obtain public information, press releases, and to obtain a reason for being treated differently from virtually all other news outlets.  On July 6, 2021, Plaintiffs submitted requests for public information regarding an officer under discipline.  In response, BRPD responded that her "request" needed to be submitted through

6

the City-Parish Public Records "portal", to which Plaintiff Chawla responded she has not had to do that in the fifteen (15) years she has worked as a reporter in Baton Rouge.  In addition, other news outlets had direct access to the PIO officers who routinely provided timely information**, public records,** and commentary.  Yet, in the instance of Plaintiffs, the provision of **public** information was either denied or delayed to such an extent the items were no longer newsworthy or of public interest.  On July 8, 2021, L'Jean McKneeley, spokesperson of the PIO for BRPD acting under direction of defendant Chief Paul, responded: "[T]he Baton Rouge Police Department reserve (sic) the right to interview with reporters/interviewees **who the department deem as impartial to incidents that may occur** within the department or that is of importance to the community and but not limited to any individuals (sic) safety and knowledge."  A copy of the July 8, 2021, McKneeley email is attached to the Plaintiffs' Affidavit of Irreparable Harms.

14.

On August 21, 2021, Plaintiffs texted Don Coppolla, Supervisor of the PIO for the BRPD again inquiring as to why she was being denied public records, including a recent request for a probable cause affidavit for an arrestee, and being denied access to press releases being issued by the BRPD to virtually all other media outlets in the area. Plaintiffs' requests for the public information were denied and BRPD stopped responding to Plaintiffs.  **Yet, at the same time, BRPD provided copies of police reports to an online media outlet in the UK known as the U.S. Sun which has featured reports on breasts and "sexy night out with Kendall" and to the exclusion of Plaintiffs who were attempting to report on crime in Baton Rouge, arrests, and an at large fugitive.**

15.

Thereafter, defendant City-Parish began requiring Plaintiffs to submit requests for public information and documents through a public records "portal", often delaying the provision of information for days and weeks at a time.  Whereas, other news outlets were immediately provided information requested from the PIO for the City-Parish and for the BRPD without delay or requirement that the requests be submitted through a "portal."  As a result, Plaintiffs' ability to provide timely information and news to the public has been, and continues to be, significantly retarded and impaired.

**15a.**

**In April/May of 2022, defendant Paul ordered that Plaintiffs were not to be considered "media" and were therefore to be denied access to and notification of all press conferences and press releases.  In so doing, defendant Paul applied General Order 139 to Plaintiffs and defendants' "determination" Plaintiffs are not "media" constituted an official custom, policy, and practice of the defendants.  Plaintiffs were afforded no opportunity appeal or otherwise contest the defendants' arbitrary determination in violation of the Fourteenth Amendment and was on account of the content of Plaintiffs' speech in violation of the First Amendment.**

16.

On July 4, 2022, Plaintiffs requested public information regarding BRPD officer Donald Steele who was facing accusations of improper conduct.  Instead of providing the information requested regarding the public officer, defendants required Plaintiffs to "submit all questions for the Baton Rouge Police Department to the Public Records Request Portal located on the City Parish Website at BRLA.GOV."  Yet, all other news outlets in the Greater Baton Rouge and

surrounding areas were not required to submit their inquiries for public information through the "portal" and, instead, were permitted to directly contact the Public Information Office of the BRPD and the Public Information Office of the City-Parish, which generally and immediately responded without delay thereby permitting those news outlets to provide the public with the information in a timely manner.  Although Plaintiffs submitted the request, as instructed, Plaintiffs were advised by the defendants the "custodian of records" would need more time to find the documents. The documents and public information were not issued to Plaintiffs until seventeen (17) days later on July 21, 2022, and, additionally, the documents and public information ultimately provided were not responsive to Plaintiffs' original request.

17.

On July 6, 2022, other counsel for the Plaintiffs submitted a formal requests for information, pointing out that Plaintiffs enjoy clearly established rights to access under the United States Constitution and La. Const. Art. XII, Section 3, in addition to La. R.S. 44:1, *et seq.* and La. R.S. 45:1451 which defines "news media" and includes Plaintiffs within the definition.  A copy of the correspondence is attached to the Affidavit of Irreparable Harm.

18.

On July 11, 2022, before receiving a response to Plaintiffs' counsel's email, Plaintiffs filed a request via the public request portal intended for the general public. Thereafter, Deelee Morris, counsel for BRPD, responded to Plaintiffs' counsel's email, and stated "[A]s per BRPD General Order 139, Public Information Officers may communicate with authorized news media representatives which is defined as 'those individuals who are directly employed by agencies of the electronic or print media such as radio, television and newspapers.'  The policy specifically states that 'free-lance workers in this field are to be regarded as other members of the general

public unless otherwise designated by the Chief of Police.' Based on the information provided, Ms. Chawla is a free-lance reporter and/or is not employed by a media agency as contemplated by the policy. As always, Ms. Chawla may obtain any public information by submitting a public records request at [Baton Rouge LA | Public Records Center (govqa.us)](Baton Rouge LA | Public Records Center (govqa.us))." **The determination that Plaintiffs did not constitute "media" was the official custom, policy, and practice of the defendants and violates Plaintiffs' clearly established rights under the First and Fourteenth Amendments.** The July 11, 2022, correspondence is attached to the Affidavit of Irreparable Harm. Yet, upon information and belief and therefore Plaintiffs allege, the Public Information Officer gave a comment and timely public information to a reporter from the Advocate regarding the same story that Unfiltered with Kiran covered.

19.

Plaintiffs continued to attempt to work with the defendants in an attempt to obtain public information in order to inform the public and these attempts continued to be denied or delayed by such a margin that when the information was finally provided, it was no longer newsworthy or of interest to the public.  This was also due, in large measure, because the defendants, who denied access to the public information to the Plaintiffs, actually provided the same information to news outlets almost immediately upon request allowing other news outlets to publish the information days, if not weeks, ahead of the Plaintiffs thereby denying the Plaintiffs the ability to inform the public in a timely fashion.  These attempts include:  July 19, 2022, Plaintiffs emailed Officer McKneely seeking information and/or an interview with Chief Paul or anyone in the administration who would discuss the rehiring of Officer Michelle Patterson with no response as of this date; August 3, 2022, Plaintiffs emailed Officers Coppola and McKneely requesting a probable cause document regarding Zachary Sibille and on August 4, 2022, City-Parish Attorney Deelee Morris

responded Plaintiffs must submit a public records request via the portal on the City/Parish's website; August 31, 2022, Plaintiffs sought public information from BRPD as to whether or not Richmond Barrow is with the department, with no response as of this date. **Plaintiffs contend they continue to be denied access to public information, press conferences, and press releases in the same manner afforded all other media. Plaintiffs contend these actions violate their clearly established rights under the First and Fourteenth Amendments.**

20.

Defendants refuse to send Plaintiffs press releases and, instead, send the press releases to other news outlets to the detriment of the Plaintiffs and the public's right to know. **Plaintiffs contend they enjoy a clearly established right to access to press releases as public information pursuant to the First Amendment and that defendants' actions in refusing to forward Plaintiffs copies of issued press releases violates Plaintiff's clearly established rights. Plaintiffs show defendant Paul admitted in order for Plaintiffs to receive press releases issued by the BRPD, it is simply a matter of including Plaintiffs' email address on the BRPD press release template listing scores of other media and individuals, but that defendants deliberately refuse to do so thereby denying Plaintiffs their clearly established rights. Plaintiffs further show that defendant City-Parish likewise refuses to include Plaintiffs' email address on its press release template of scores of other media and individuals and that this action on the part of defendant City-Parish constitutes its official custom, policy, and practice denying Plaintiffs access to public information in violation of the First Amendment.** In addition, defendant Chief Paul publicly refers to Plaintiff Chawla with a deliberately incorrect pronunciation of her name (although politely correct numerous times) which appears to be racially-motivated given Plaintiff Chawla's Indian heritage. Defendant Chief Paul has also publicly

11

exclaimed he will not provide information to Plaintiffs because of their "credibility".  Further, defendant City/Parish personnel from the Mayor's office advised Plaintiffs they are just a "blogger" and therefore have no right of access guaranteed to the press.

21.

Defendant City-Parish, through Armstrong, reiterated to Plaintiffs that the defendants did not consider Plaintiffs a reporter or media or a news outlet and, instead, had imposed an arbitrary**, unwritten policy and** "requirement" that Plaintiffs be "credentialed."  Solely in an attempt to try and resolve the ongoing issues of denial of access and timely access to public information, Plaintiffs obtained "credentials" from the Louisiana Press Association.  A copy of same are attached to the Affidavit of Irreparable Harm.  **However, Plaintiffs submit that no other media organization was subjected to this "policy" of the defendants and Plaintiffs submit the defendants' unwritten "policy" of requiring "credentials" is unconstitutional on its face and as applied.  Specifically, Plaintiffs show the official "policy" of defendant City-Parish in requiring "credentials" was imposed only on the Plaintiffs, was imposed only on the Plaintiffs because of the content of Plaintiffs' speech, represented a denial of access to public information because defendant City-Parish imposed this "policy" on Plaintiffs in order to exclude Plaintiffs from press conferences and access to public information, and there was no process whereby Plaintiffs could "appeal" the unconstitutional imposition of the "credentialing policy" on the Plaintiffs.  Plaintiffs therefore submit this "policy" of the City-Parish violates Plaintiffs' clearly established rights under the First Amendment to freedom of speech and of the press and the Fourteenth Amendment to due process.**

22.

Despite the fact Plaintiffs obtained "credentials", which are nowhere required under the law or any **legitimate** policy in order for Plaintiffs to be treated in a similar fashion as other news outlets, defendant continue to refuse Plaintiffs press releases, notices of press conferences, and timely access to public information and records.  This included the removal of Plaintiffs from a public press conference held at BRPD on September 1, 2022, as set forth herein.  **Plaintiffs show the "credentialing" requirement constitutes a policy, practice, and custom of defendant City-Parish.**

23.

Following the September 1, 2022, removal from the public press conference at BRPD, Plaintiffs were initially denied access to a press conference held by the Mayor, Chief Paul, the City-Parish, and BRPD, on September 22, 2022, following the murder of an LSU student on Government Street.  The murder garnered national media attention.  Yet, the press conference was "held" behind a "locked door" with persons stationed at the door who admitted virtually all other news outlets to attend the public press conference, including members of the public, except Plaintiffs.  After Plaintiffs waited nearly thirty (30) minutes to attend the press conference, Plaintiffs were finally let into the locked room where the press conference had already begun, thereby denying Plaintiffs access to and timely access to information for the public **and in violation of Plaintiffs' clearly established rights under the First and Fourteenth Amendments**.

24.

Following the press conference, Plaintiffs, along with the other news outlets to the public hallway on the 7th floor of the Governmental Building.  While other news outlets were questioning

the press conference attendees and gathering information, Plaintiffs were ordered to move to the 3rd floor by staff from the Mayor's office and BRPD.  While on the 3rd floor, a press conference attendee gave an interview with WVLA Channel 33 and then approached Plaintiffs to give an interview with Plaintiffs.  Plaintiffs began live streaming the interview when, almost immediately, members of the Mayor's staff walked over to Plaintiffs and told the interviewee he needed to leave immediately for an impromptu "private" meeting with the Mayor and Chief.   Defendants deliberately interfered with Plaintiffs news gathering while permitting every other new outlet in attendance to interview and obtain public information regarding the Government Street murder, and to the complete exclusion of Plaintiffs.

### 24a.

**Defendants continue to deny Plaintiffs access to public information and to press conferences, although defendants invite and permit other media to attend to the exclusion of the Plaintiffs.**

### 24b.

**On August 26, 2023, Mayor Broome's Office hosted a press conference where she addressed crime rates within the City of Baton Rouge. The issue of crime rates, especially as they are increasing in Baton Rouge, is one of prominent public concern and about which the public has a clearly established right to be informed.  However, Plaintiffs were deliberately excluded from notification or being informed of the press conference although all other media outlets in the Baton Rouge media market were notified in advance of the conference and invited to attend. Plaintiffs discovered the press conference took place on the following Monday after another media outlet, WAFB-9, published an online article discussing the press conference and disseminating the information from Mayor Broome and Chief Paul**

regarding the crime rates, warnings to the public regarding increasing crime, and the defendants' proposed plan for addressing the increased crime in Baton Rouge.  Plaintiffs had no opportunity to report on this information, no opportunity to do so in a timely manner, were denied access to the same information in the same manner, and the public was denied access to the information as would have been reported by the Plaintiffs.

24c.

On August 28, 2023, BRPD hosted a press conference at 4:30 p.m. and invited the media to attend, except for the Plaintiffs. At 4:00 p.m., Plaintiffs and Plaintiffs' staff attempted to attend the press conference and with enough time to set up before the start.  All other media organizations were permitted to enter the press conference except Plaintiffs.  At 4:15pm the PIO for the BRPD allowed all other media into the press conference room located in a public building, except Plaintiffs.  Plaintiffs were deliberately kept outside the room where the press conference was being held.  Plaintiffs were then approached by defendant Chief Paul at 4:27 p.m. who told Plaintiffs "he" was going to allow Plaintiffs into the press conference this time, although he had banned Plaintiffs from press conferences, but only as a sign of "good faith" due to this pending litigation.  Thereafter and despite the fact defendant Paul, individually and in his official capacity, has held press conferences and issued press releases, said defendant continues to deliberately exclude Plaintiffs in violation of Plaintiffs' clearly established rights under the First and Fourteenth Amendments.  As a result of the banning acts and denials of access by defendant Paul, individually and in his official capacity, Plaintiffs are fearful of reporting fully and fairly on the actions of public officials, including Paul, lest they continue to be punished for the content of their speech.  Plaintiffs submit their speech has been chilled by the defendants.

15

**24d.**

On August 31, 2023, Mayor Broome's Office hosted a press conference to announce that the BRPD Street Crime Unit was being disbanded and subjected to investigation as a result of alleged wrongdoing on the part of the public officers.  This information is of prominent public concern.  Yet, Plaintiffs were not notified of the press conference although all other media in the Baton Rouge area was notified. Plaintiffs discovered the press conference took place only after another media outlet, WAFB-9, published an online article discussing the contents of the press conference.  Plaintiffs had no opportunity to report on this information, no opportunity to do so in a timely manner, were denied access to the same information in the same manner, and the public was denied access to the information as would have been reported by the Plaintiffs.  Thereafter and despite the fact defendant City-Parish has held press conferences and issued press releases, said defendant continues to deliberately exclude Plaintiffs which such action represents official practice, policy, and custom of defendant City-Parish and which is in violation of Plaintiffs' clearly established rights under the First and Fourteenth Amendments.

**24e.**

Plaintiffs submit their right of access to publicly available information has been clearly established for the last fifty-two (52) years and that defendants knew in 2021 depriving Plaintiffs of access to publicly available information was unconstitutional and violated their clearly established First Amendment Rights.

**24f.**

Plaintiffs submit it was also clearly established as of 2021 that Plaintiffs were entitled to receive notice of press releases and attend press conferences and those rights have been

clearly established since, at least, 1988.  Plaintiffs additionally show defendant Paul barred Plaintiffs from receipt of press releases, notification or and attendance at press conferences, and required Plaintiffs to request and receive public information in a far more cumbersome fashion that other media and that his actions were in knowing violation of Plaintiffs' clearly established rights under the First Amendment.

**24g.**

Plaintiffs show that defendants' policy of applying a "credentialing" requirement to Plaintiffs violated the Plaintiffs' rights under the First Amendment and under the Fourteenth Amendment due process.  Plaintiffs submit this was clearly established as of 2021 and, indeed, as of 1997 (and prior to 1997) the rights to newsgathering and protection from arbitrary restrictions without due process have been clearly established.

25.

Plaintiffs contend BRPD General Order 139 is unconstitutional on its face and as applied. Plaintiffs submit General Order 139 which leaves, to the discretion of the Chief, determination of whether or not a particular reporter is allowed access to and timely access to public information, is facially unconstitutional **in violation of the First Amendment Right to access to public information, freedom of speech, and freedom of the press and in violation of the Fourteenth Amendment Right to due process as there is no process by which Plaintiffs can appeal or otherwise contest application of General Order 139 and ensuing denial by defendants of Plaintiffs' access to public information and to attend press conferences during which public information is disseminated**.  As applied to the Plaintiffs **and specifically at the direction of defendant Paul as set forth herein**, General Order 139 is being used to exclude Plaintiffs **from**

**access to public information and to attend press conferences during which public information is disseminated** because of the content of Plaintiffs' articles which defendants contend are "critical" of the defendants **in violation of the First Amendment and constituting First Amendment retaliation**.  Plaintiffs seek, and are entitled, to Judgment declaring BRPD General Order 139 unconstitutional **on its face and as applied**.

26.

Plaintiffs contend the City-Parish "policy" requiring "credentialing" as a precondition of access to and timely access to public information is unconstitutional on its face and as applied. Plaintiffs show the law is clearly established that imposition of "policy" which purports to limit access and timely access to public information based upon arbitrary "criteria", including purported "credentials" is facially unconstitutional **and violates the First Amendment and the Fourteenth Amendment due process**.  Plaintiffs show in this case, defendants arbitrarily selected a particular organization as the alleged arbiter of "medianess" and, further, failed and refused to afford Plaintiffs any due process to **appeal or** contest the unlawful and arbitrary imposition **of credentialing.  Plaintiffs also show the City-Parish "credentialing" policy represents an unconstitutional official policy, custom, and practice of the City-Parish**.

27.

Plaintiffs seek and are entitled to issuance of a preliminary and, in due course, permanent injunction directed to defendants, City-Parish, specifically including its Agency, the Baton Rouge Police Department, and Chief Paul, their officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with them restraining and enjoining them from denying Plaintiffs co-equal access to and timely access to public information in the same manner and time as afforded other news outlets upon their requests, from denying and restricting Plaintiffs

from attending press conferences, from denying and restricting Plaintiffs co-equal receipt of press releases from the defendants in the same manner and time as afforded other news outlets, and prohibiting defendants from retaliating against Plaintiffs because of the content of Plaintiffs' publications.

28.

Plaintiffs show they have sustained and continue to sustain immediate and irreparable harm as a result of the conduct of the defendants set forth herein.  Plaintiffs have been and continue to be irreparably harmed in their ability to report on and timely report on the conduct and affairs of the City-Parish, the BRPD, and their officials, including Chief Paul, that the public has been denied access to information regarding the conduct of their public bodies and officials, that Plaintiffs' speech has been chilled as a result of viewpoint retaliation, that the public has been denied access to other points of view, **that Plaintiffs' rights of access to public information,** and, if not restrained, Plaintiffs' rights under the 1st Amendment to the United States Constitution and under La. Const. Art. XII, Section 3, and for due process under the 14th Amendment to challenge the "credentialing" prior to restraint, have been and will continue to be violated.

29.

Attached hereto and made part hereof is the Plaintiffs' Affidavit of Irreparable Harm and Plaintiffs' Verifications.

30.

Attached hereto and incorporated herein by reference is Plaintiffs' Memorandum in Support of Petition for Declaratory and Injunctive Relief.

31.

Attached hereto is the Certification of Counsel pursuant to Fed.R.Civ.P. Rule 65.

32.

Plaintiffs seek and are entitled to an award of attorney fees and costs pursuant to 42 U.S.C. §1988, and all such other relief to which Plaintiffs are entitled at law or in equity.

WHEREFORE, Plaintiffs, Unfiltered with Kiran, LLC and Kiran Chawla, pray after due proceedings are had that there be Judgment herein in their favor and against defendants, City of Baton Rouge/Parish of East Baton Rouge and on behalf of its Agency, the Baton Rouge Police Department, and Murphy Paul, individually and in his official capacity as Chief of the Baton Rouge Police Department, declaring BRPD General Order 139 unconstitutional, declaring the City-Parish requirement/policy of "credentialing" for media unconstitutional, and issuing a preliminary, and in due course, permanent injunction directed to defendants, City-Parish, specifically including its Agency, the Baton Rouge Police Department, and Chief Paul, their officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with them restraining and enjoining them from denying Plaintiffs co-equal access to and timely access to public information in the same manner and time as afforded other news outlets upon their requests, from denying and restricting Plaintiffs from attending press conferences, from denying and restricting Plaintiffs co-equal receipt of press releases from the defendants in the same manner and time as afforded other news outlets, and prohibiting defendants from retaliating against Plaintiffs because of the content of Plaintiffs' publications, and, further, awarding Plaintiffs attorney fees, all costs of these proceedings, and all such other relief to which Plaintiffs are entitled at law or in equity.

Respectfully submitted,


By: _____s/Jill L. Craft _____
Jill L. Craft, T.A., #20922
W. Brett Conrad, Jr., #37639
329 Saint Ferdinand Street
Baton Rouge, Louisiana  70802
(225) 663-2612
jcraft@craftlaw.net;bconrad@craftlaw.net